**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA REED, BETH REED AS GUARDIAN AD LITEM FOR PATRICIA REED, and ADVOCATES FOR DISABLED AMERICANS, | CIVIL ACTION NO. 3:CV-13-1175 (JUDGE CAPUTO) |
| Plaintiffs, | |
| v. | |
| SCHUYLKILL HEALTH SYSTEM, SCHUYLKILL HEALTH CENTER, and SCHUYLKILL MEDICAL CENTER SOUTH, | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss (Doc. 8) filed by Defendants Schuylkill Health System, Schuylkill Health Center, and Schuylkill Medical Center (collectively, "Defendants"). Because the Complaint adequately sets forth a claim for violation of § 504 of the Rehabilitation Act, the motion to dismiss will be denied.

## **I. Background**

The facts set forth in the Complaint are as follows:

Plaintiff Patricia Reed was admitted to Schuylkill Medical Center from May 1, 2011 to May 9, 2011, and again on May 15, 2013 for approximately two weeks due to severe pain from problems relating to a fall. (*Compl.*, ¶ 7.) Patricia Reed is "profoundly deaf" and communicates primarily through American Sign Language. (*Id.* at ¶ 1.) Patricia Reed was denied a qualified interpreter during treatment despite her request. (*Id.* at ¶ 7.) As a result, she was unable to communicate effectively with medical staff or participate in her care. (*Id.*)

When Patricia Reed was admitted for treatment, she was unable to express her painful conditions to doctors and nurses. (*Id.* at ¶ 8.) During the time no qualified

interpreters were provided, Patricia Reed was ignored, humiliated and treated like "a non-person" by Defendants. (*Id*. at ¶ 9.) She therefore lacked a complete understanding of the treatment she received. (*Id*.)

Based on the foregoing, Patricia Reed commenced this action against Defendants on May 1, 2013. The Complaint asserts a claim against Defendants under Section 504 of the Rehabilitation Act (the "RA"), 29 U.S.C. § 794. (*Compl.*, Second Count.)[1] In addition, Patricia Reed requests that her daughter, Beth Reed, be permitted to serve as her guardian ad litem. (*Id*. at ¶ 1.)[2]

On September 23, 2013, Defendants filed a motion to dismiss the RA claim. Defendants also opposed the appointment of Beth Reed as guardian ad litem. (Doc. 8.) Patricia Reed filed a timely brief in opposition to Defendants' motion on October 23, 2013. (Doc. 12.) On November 7, 2013, Defendants filed a reply brief in further support of their motion. (Doc. 14.) The motion to dismiss is now fully briefed and ripe for disposition.

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not

---

[1] The Complaint also asserted claims against Defendants under the Americans with Disabilities Act and the Pennsylvania Human Relations Act. (*Compl.*, First and Third Counts.) The parties have agreed to the dismissal of these claims. (Doc. 13.)

[2] Advocates for Disabled Americans ("AFDA") was also named as a plaintiff in the Complaint. (*Compl.*, ¶ 1 and Fourth Count.) The parties have agreed to the dismissal of AFDA as a party to this action. (Doc. 13.)

consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual

3

allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    The Rehabilitation Act Claim**

The Second Count of the Complaint, the only claim that has not been dismissed by agreement of the parties, asserts a cause of action for violation of § 504 of the RA. Section 504 provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). For purposes of § 504, a "qualified individual with a disability," subject to exceptions not applicable here, is "any person who has a disability as defined in section 12102 of Title 42." 29 U.S.C. § 705(20)(B). The incorporated provision of the Americans with Disabilities Act defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities of such individual", "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). The statute further provides that major life activities include "hearing." *Id*. at § 12102(2)(A).

The RA's implementing regulations mandate that a hospital that receives federal funds "shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R. § 84.52(c). Furthermore, a recipient hospital with fifteen or more employees "shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." *Id*. at § 84.52(d)(1). "[A]uxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision." *Id*. at § 84.52(d)(3). "[A]ids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." *Id*. at § 84.4(b)(2).

"To state a claim under § 504, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) she was discriminated against based on her disability." *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 551

5

(D.N.J. 2000); *see also Jarzynka v. UPMC Health Sys.*, No. 10-1594, 2011 WL 4565612, at *4 (W.D. Pa. Sept. 29, 2011) (elements for a claim under the RA are "(1) he is a disabled individual under the Rehabilitation Act; (2) he is otherwise qualified for the position or benefit sought; (3) he was excluded or discriminated against solely by reason of his handicap; and (4) the program or activity in question receives federal financial assistance").

Recently, the Third Circuit held that "claims for compensatory damages under § 504 of the RA . . . require a finding of intentional discrimination." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013). Intentional discrimination, however, can be proved by a showing of deliberate indifference. *Id*. at 263.

To satisfy the deliberate indifference standard in this context, a plaintiff must establish both: "(1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure to act* despite that knowledge." *Id*. at 265 (emphasis in original) (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). Deliberate indifference does not require animosity or ill will towards the disabled individual, but it must involve "a 'deliberate choice, rather than negligence or bureaucratic inaction.'" *Id*. at 263 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)). And, because deliberate indifference requires actual knowledge, "allegations that one would have or 'should have known' will not satisfy the knowledge prong . . . ." *Id*. at 266 n.26 (quoting *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)).

In moving to dismiss the § 504 claim, Defendants argue that Plaintiff fails to allege that Patricia Reed was denied the benefits of any medical services.[3] Rather, according to Defendants, because Patricia Reed was admitted to the hospital and not denied medical

---

[3] Defendants do not argue that Patricia Reed fails to allege that she is a qualified individual with a disability or that they receive federal funds. The Complaint avers both of these elements of her RA claim. (*Compl*., ¶ 16.)

6

treatment, the Complaint fails to state a claim for a violation of § 504.  Defendants also assert that Patricia Reed was accompanied to the hospital on both occasions by her daughter or husband, and the medical personnel were able to communicate with Patricia Reed through these family members.

The RA claim will not be dismissed pursuant to the claimed communications between medical staff members and Patricia Reed's family members because these "facts" are not set forth in the Complaint.  Indeed, "[a]n argument that relies on proof of facts outside the Complaint cannot succeed on a motion to dismiss." *Rehab. Inst. of N.J., Inc. v. Home Depot Inc.*, No. 12-4035, 2012 WL 5944658, at *2 (D.N.J. Nov. 27, 2012); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd.*, No. 12-3824, 2013 WL 5692880, at *2 (June 12, 2013) ("Defendants' arguments require me to consider 'facts' that are well outside the Complaints in this matter.  I am not prepared to consider these facts at the Rule 12 stage."); *Schlegel v. State Farm Mut. Auto. Ins. Co.*, No. 11-CV-2190, 2012 WL 2885052, at *3 n.1 (M.D. Pa. July 13, 2012) ("While perhaps true, such outside facts are not properly considered at this stage and I will limit my analysis to the allegations of the Amended Complaint."); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  Because these "facts" are not alleged in the Complaint, they will not be considered in resolving Defendants' motion to dismiss.  Moreover, Plaintiff has referenced a case where a hearing-impaired plaintiff proceeded on a RA claim when a hospital failed to provide an interpreter and communication occurred with the plaintiff primarily through his family members acting as interpreters. *See Loeffler v. Staten Univ. Island Hosp.*, 582 F.3d 268, 274-77 (2d Cir. 2009) (vacating district court's order granting summary judgment on RA claim where hearing-

impaired patient's children were required to interpret for their father during his time in the hospital before and after heart surgery).

Defendants also seek dismissal of the RA claim on the basis that Plaintiff fails to adequately allege intentional discrimination as required to recover compensatory damages under the RA. As stated, intentional discrimination under the RA can be established by showing deliberate indifference. And, to plead deliberate indifference, a plaintiff must allege knowledge that a federal right is substantially likely to be violated and failure to act despite that knowledge. *See S.H.*, 729 F.3d at 265.

The Complaint sufficiently pleads that Defendants acted with deliberate indifference to Patricia Reed's disability. Patricia Reed alleges that she requested a qualified interpreter during the course of her medical treatment, but Defendants nevertheless refused to provide an interpreter or other auxiliary aids. Based on Defendants failure to provide an interpreter, Patricia Reed was unable to understand and participate in her care. Here, Patricia Reed had protected federal rights by way of the RA and its implementing regulations, *see, e.g.*, 45 C.F.R. § 84.52(d)(1), and the Complaint adequately alleges that Defendants actually knew of Patricia Reed's disability and need for auxiliary aids based on her requests for an interpreter, that without an interpreter or other auxiliary aid Patricia Reed's rights would likely be violated, and that Defendants failed to act despite their knowledge of Patricia Reed's need for an auxiliary aid. Thus, as Plaintiff sufficiently alleges all elements necessary to state a claim for compensatory damages under § 504, she will be permitted to proceed with the Second Count of the Complaint.

Moreover, persuasive authority supports the proposition that the failure of a hospital and its medical personnel to respond to requests for a sign-language interpreter may state a claim under the RA. *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009); *see also Estate*

of *Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 707 (D. Md. 2001), *superseded by statute on other grounds*, Md. Code, Cts. & Jud. Proc. § 3-2a-02(c)(2)(ii), *as recognized in Jones v. Bagalkotakar*, 750 F. Supp. 2d 574 (D. Md. 2010) ("while it is true that there is no *per se* rule that sign language interpreters are necessary in hospital settings, violations of § 504 may be found where hearing-impaired patients have been denied access to sign language interpreters."). According to the United States Court of Appeals for the Eleventh Circuit in *Liese*, a decision cited with approval by the Third Circuit in *S.H.*, 729 F.3d at 263-665, "the test of determining whether an entity subject to the RA has provided appropriate auxiliary aids where necessary is inherently fact-intensive." *Liese*, 701 F.3d at 342-43 (citing *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."); *Randolph v. Rodgers*, 170 F.3d 850, 859 (8th Cir. 1999) (finding that whether a sign language interpreter was required under the RA is a question of fact inappropriate for summary judgment); *Duffy v. Riveland*, 98 F.3d 447, 454-56 (9th Cir. 1996) (concluding that whether qualified sign language interpreter was required under the Americans with Disabilities Act of 1990 is a question of fact inappropriate for summary judgment)).[4] In view

---

[4] *Liese* also provides:

> Nonetheless, this does not mean that every request for an auxiliary aid that is not granted precludes summary judgment or creates liability under the RA. Thus, for example, as both parties agree, the simple failure to provide an interpreter on request is not necessarily deliberately indifferent to an individual's rights under the RA. Indeed, construing the regulations in this manner would effectively substitute "demanded" auxiliary aid for "necessary" auxiliary aid. Instead, the proper inquiry is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment.

*Liese*, 701 F.3d at 343.

of this authority, Plaintiff will be permitted to proceed with the claim under § 504 to explore Defendants' liability for the alleged violation of the RA. The motion to dismiss the Second Count of the Complaint will be denied.

**C.     Appointment of Guardian Ad Litem**

Defendants also oppose the appointment of Beth Reed as Patricia Reed's guardian ad litem. Because "a guardian ad litem . . . is a nominal party only; the ward is the real party in interest . . . ," Charles Alan Wright et al., *Federal Practice and Procedure* § 1548, at 373–74 (2d ed. 1990); *Bacon v. Mandell*, No. 10-5506, 2012 WL 4105088, at *15 (D.N.J. Sept. 14, 2012), Beth Reed's participation in this case would be as a nominal party only. Beth Reed has submitted a certification in support of her mother's request to appoint her as guardian ad litem. (Doc. 14, Ex. 1.) This request implicates Rule 17 of the Federal Rules of Civil Procedure.

Rule 17 governs the proper parties to a case, and it provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Under Rule 17(b): "[c]apacity to sue or be sued is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile . . . ." Fed. R. Civ. P. 17(b)(1); *see also Greater New York Mut. Ins. Co. v. Bell Socialization Servs., Inc.*, No. 08-CV-327, 2009 WL 1743747, at *6 (M.D. Pa. June 18, 2009). The Pennsylvania Rules of Civil Procedure provide that a "plaintiff who is an incapacitated person shall be represented by a guardian or by a guardian ad litem who shall supervise and control the conduct of the action in the plaintiff's behalf." Pa. R. Civ. P. 2053(a). An "incapacitated person" is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety." Pa. R. Civ. P. 2051; *see also Bell*, 2009 WL

1743747, at *6 (applying Rule 2051 to determine capacity). At this stage in the proceeding, there is limited information available to determine whether Patricia Reed fits within the definition of an "incapacitated person" under Pennsylvania law. However, Beth Reed avers that her mother "is not of full mind and is unable to attend to her affairs and does not properly understand her legal rights." (Doc. 13, Ex. 1, ¶ 10.) In light of Beth Reed's averments, Patricia Reed qualifies as an "incapacitated person."

If a court makes a finding of incapacity, the court must then make a two-part inquiry under Rule 17. *See Bell*, 2009 WL 1743747, at *6. "First, the court must determine whether the individual has a duly appointed represent[ative] under state law who may represent the individual's interest in the action." *Id*. (citing *Gibbs ex rel Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002)). As there is no indication that a legal representative has been appointed under state law for Patricia Reed, "the Court must [therefore] look to Rule 17(c) and determine whether to appoint a guardian ad litem or issue another appropriate order to protect the incompetent person who is unrepresented in the action. This decision is not based on state law, but on the need to protect the incapacitated party's interests." *Id*. at *6; Fed. R. Civ. P. 17(c)(2) ("The court must appoint a guardian ad litem- or issue another appropriate order- to protect a minor or incompetent person who is unrepresented in an action."); *see also Gibbs ex rel. Gibbs*, 314 F.3d at 135-36 ("A district court need not look to the state law, however, in determining what factors or procedures to use when appointing the guardian ad litem. Rather, its polestar appears to be the protection of the [individual's] interests." (internal citation omitted)); *Scannavino v. Florida Dep't of Corr*., 242 F.R.D. 662, 666-67 (M.D. Fla. 2007) ("Unlike a determination of competency, a district court's decision whether to appoint a guardian ad litem is purely procedural and wholly uninformed by state law."); *Estate of Escobedo v. City of Redwood City*, No. 03-3204, 2006 WL 571354, at *7 (N.D. Cal. Mar. 2, 2006) ("the district court does not need to rely on state law when

11

determining what procedures and factors to use when appointing a guardian ad litem."). Here, as Patricia Reed is the plaintiff in this matter alleging that her rights have been violated, it is necessary to appoint a guardian to represent her interests. Thus, to protect these interests, Beth Reed will be appointed Patricia Reed's guardian ad litem for this action.[5]

### III. Conclusion

For the above stated reasons, Defendants' motion to dismiss will be denied, and Patricia Reed's request to appoint Beth Reed as her guardian ad litem for this action will be granted.

An appropriate order follows.


December 9, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

---

[5] Nevertheless, "[a]fter appointing a guardian ad litem, a court maintains a continuing obligation to supervise the guardian ad litem's work," and "the court retains the power to remove/substitute the appointed guardian ad litem, . . . or choose not to approve the guardian ad litem's proposals." *Bacon v. Mandell*, No. 10-5506, 2012 WL 4105088, at *15 n.27 (D.N.J. Sept. 14, 2012) (citations and internal citations omitted).